# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

EDWARD SEELY, *et al.*,

                        Plaintiffs,

   v.

ISIDRO BACA, *et al.*,

                        Defendants.

3:15-cv-00118-MMD-VPC
(Consolidated With 3:15-cv-00124-MMD-VPC
and 3:15-cv-00126-MMD-WGC)

## AMENDED[1] REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants motion for summary judgment. (ECF No. 78.) Plaintiffs opposed, (ECF No. 91), and defendant replied, (ECF No. 102). Having thoroughly reviewed the record, the court hereby recommends that the motion for summary judgment be denied in part and granted in part, as discussed below.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Edward Seely ("Seely"), André Boston ("Boston"), and William Lyons ("Lyons") (collectively, "plaintiffs") are inmates at Northern Nevada Correctional Center ("NNCC") in Carson City, Nevada. Pursuant to 42 U.S.C. § 1983, plaintiffs bring a consolidated civil rights action against prison officials at NNCC and Nevada Department of Corrections ("NDOC"). Plaintiffs allege violations of Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("RA"), the Eighth Amendment, and the Fourteenth Amendment.

---

[1] The original Report and Recommendation, (ECF No. 103), contained a clerical error recommending that the clerk enter judgment and close the case. The court may *sua sponte* correct a clerical error whenever one is found in the judgment, order, or other part of the record. FED. R. CIV. P. 60(a). In order to conform to the court's "contemporaneous intent" that plaintiffs' case proceed to trial, this Amended Report and Recommendation removes the recommendation that the clerk enter judgment and close the case. *Metso Minerals, Inc. v. Powerscreen Int. Distribution Ltd.*, 297 F.R.D. 213 (E.D.N.Y. 2014). This amendment corrects a clerical error only; therefore, the parties need not refile the objection to report and recommendation (ECF No. 104) or the response (ECF No. 107).

1    Plaintiffs brought separate civil rights complaints that raise identical claims.[2]  Plaintiffs

2    allege generally that prison officials at NNCC implemented an inmate level system that violates

3    their constitutional rights because it denies them access to adequate outdoor exercise facilities,

4    requires them to obtain employment in order to obtain a more favorable custody level despite the

5    lack of employment opportunities for disabled inmates, and treats them differently than similarly

6    situated inmates. (ECF No. 6.) Plaintiffs also allege that NNCC's exercise facilities are not ADA-

7    compliant and that prison officials failed to provide plaintiffs with reasonable accommodations.

8    (*Id.*)

9    On October 19, 2015, the court screened plaintiffs' separate complaints. (*See* ECF No. 6;

10   ECF No. 4 in 3:15-CV-00124-MMD-VPC; ECF No. 5 in 3:15-CV-00126-MMD-VPC.)  The

11   court's screening permitted plaintiffs' Eighth Amendment conditions of confinement claims, ADA

12   and RA claims, and Fourteenth Amendment equal protection claims to proceed against NNCC

13   Warden Isidro Baca, NNCC Associate Warden Ron Schreckengost, NNC Associate Warden Lisa

14   Walsh, NDOC Deputy Director E.K. McDaniel, NDOC Director Greg Cox, Board of Prisons

15   ("BOP") Commissioner Brian Sandoval, BOP Commissioner Catherine Cortez-Masto, and BOP

16   Commissioner Ross Miller. (*See* ECF No. 5 at 10.)

17   On March 5, 2015, Boston and Lyons filed motions to join Seely's case. (ECF No. 3 in

18   3:15-CV-00124-MMD-VPC and 3:15-CV-00126-MMD-VPC.)  The court granted Boston and

19   Lyon's motions to join on March 1, 2016.[3] (ECF No. 18.)

20   Defendants moved for summary judgment, (ECF No. 78), plaintiffs opposed, (ECF No. 91),

21   and defendants replied (ECF No. 102).  This recommended disposition follows.

22

23

24

25   [2] Boston's complaint is filed at ECF No. 5 in Case No. 3:15-CV-00124-MMD-VPC and Lyons's complaint is filed
     at ECF No. 6 in Case No. 3:15-CV-MMD-WGC. Seely's complaint is filed at ECF No. 6 in the instant action.

26   [3] The parties stipulated to substitute Attorney General Adam Paul Laxalt ("Laxalt") for Cortez-Masto and Secretary
     of State Barbara Cegavske ("Cegavske") for Miller. (ECF No. 22.) Because Cortez-Masto and Miller were sued

27   only in their official capacities but no longer BOP Commissioners, the court found good cause to order the
     substitution. (ECF No. 24.)

28

1

## II.    LEGAL STANDARD

2      Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v.*

3  *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court properly grants summary

4  judgment when the record demonstrates that "there is no genuine issue as to any material fact and

5  the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317,

6  330 (1986).  "[T]he substantive law will identify which facts are material.  Only disputes over

7  facts that might affect the outcome of the suit under the governing law will properly preclude the

8  entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be

9  counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" only

10  where a reasonable jury could find for the nonmoving party.  *Id.*  Conclusory statements,

11  speculative opinions, pleading allegations, or other assertions uncorroborated by facts are

12  insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984

13  (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).  At this stage,

14  the court's role is to verify that reasonable minds could differ when interpreting the record; the

15  court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d

16  1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

17      Summary judgment proceeds in burden-shifting steps.  A moving party who does not bear

18  the burden of proof at trial "must either produce evidence negating an essential element of the

19  nonmoving party's claim or defense or show that the nonmoving party does not have enough

20  evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,

21  210 F.3d 1099, 1102 (9th Cir. 2000).  Ultimately, the moving party must demonstrate, on the basis

22  of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in

23  favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank*

24  *of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  The court views all evidence and any

25  inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v.*

26  *Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

27

28

1  Where the moving party meets its burden, the burden shifts to the nonmoving party to

2  "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle*

3  *Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light

4  one," and requires the nonmoving party to "show more than the mere existence of a scintilla of

5  evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury

6  could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The

7  nonmoving party may defeat the summary judgment motion only by setting forth specific facts

8  that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248;

9  *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence,

10  Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the

11  material facts" will not defeat a properly-supported and meritorious summary judgment motion,

12  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

13  For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant

14  in motions and pleadings are admissible to the extent that the contents are based on personal

15  knowledge and set forth facts that would be admissible into evidence and the litigant attested under

16  penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir.

17  2004).

18  ### III.    DISCUSSION

19  **A.    Legal Standards for Civil Rights Claims under § 1983**

20  42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to

21  deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063,

22  1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute

23  "provides a federal cause of action against any person who, acting under color of state law,

24  deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore

25  "serves as the procedural device for enforcing substantive provisions of the Constitution and

26  federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section

27  1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or

28

1   official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a

2   section 1983 claim, the plaintiff must establish each of the elements required to prove an

3   infringement of the underlying constitutional or statutory right.

4        **1. Eighth Amendment Conditions of Confinement Standard**

5        "It is undisputed that the treatment a prisoner receives in prison and the conditions under

6   which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v.*

7   *McKinney*, 509 U.S. 25, 31 (1993). Conditions of confinement may, consistent with the

8   Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

9   However, prisons must not deprive inmates of a human need such as food, warmth, or exercise.

10   *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).  In evaluating a prisoner's claim, courts consider (1)

11   whether prison guards assaulted the prisoner "with a sufficiently culpable state of mind" and (2)

12   whether the alleged wrongdoing was objectively "harmful enough" to establish a constitutional

13   violation. *Hudson*, 503 U.S. at 8.

14        As to the subjective prong of the Eighth Amendment analysis, prisoners must establish that

15   prison officials were deliberately indifferent to unconstitutional conditions of confinement to

16   establish an Eighth Amendment violation. *See Farmer v. Brennan*, 511 U.S. 825, 834

17   (1994); *Wilson*, 501 U.S. at 303.  A prison official exhibits deliberate indifference when he knows

18   or has reason to know that a harm to a prisoner's federally protected right is substantially likely,

19   but fails to act upon that substantial likelihood.  *See Farmer*, 511 U.S. at 832; *Duvall v. Cty. of*

20   *Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

21        When determining whether the conditions of confinement meet the objective prong of the

22   Eighth Amendment analysis, the court must analyze each condition separately to determine whether

23   that specific condition violates the Eighth Amendment. *See Toussaint*, 801 F.2d 1080, 1107

24   (1986). "Some conditions of confinement may establish an Eighth Amendment violation 'in

25   combination' when each would not do so alone, but only when they have a mutually enforcing

26   effect that produces the deprivation of a single, identifiable human need such as food, warmth, or

27   exercise — for example, a low cell temperature at night combined with a failure to issue

28

1    blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *see also Thomas v. Ponder*, 611 F.3d 1144,

2    1151 (9th Cir. 2010).   When considering the conditions of confinement, the court should also

3    consider the amount of time to which the prisoner was subjected to the condition.  *See Hutto v.*

4    *Finney*, 437 U.S. 678, 686-87 (1978); *Norwood v. Vance*, 591 F.3d 1062, 1070 (9th Cir. 2005)

5    (temporary denial of outdoor exercise with no medical effects is not a substantial deprivation).

6        ## 2.  Fourteenth Amendment Equal Protection Standard

7        "The Equal Protection Clause requires the State to treat all similarly situated people

8    equally." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citing *City of Cleburne v. Cleburne*

9    *Living Ctr.*, 473 U.S. 432, 439 (1985)).  "In the prison context, however, even fundamental rights

10   such as the right to equal protection are judged by a standard of reasonableness — specifically,

11   whether the actions of prison officials are 'reasonably related to legitimate penological reason.'"

12   *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987);

13   *Jordan v. Gardner*, 986 F.2d 1521, 1530 (9th Cir. 1993).

14       The preliminary inquiry in an equal protection claim is identifying the plaintiffs' relevant

15   class, which is "comprised of similarly situated persons so that the factor motivating the alleged

16   discrimination can be identified."  *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013)

17   (internal quotation omitted).  Then, "a plaintiff must show that the defendant acted with an intent

18   or purpose to discriminate against him based upon his membership in a protected class." *Serrano*

19   *v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003).  Because the claim requires proof of intentional

20   discrimination, "[m]ere indifference" to the unequal effects on a particular class does not establish

21   discriminatory intent.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

22       ## 3.  Americans With Disabilities Act and Rehabilitation Act Standard

23       Title II of the ADA provides that "no qualified individual with a disability shall, by reason

24   of such disability, be excluded from participation in or be denied the benefits of the services,

25   programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C.

26   § 12132 (2012).  The Supreme Court has held that Title II applies to state prisons. *Pa. Dep't of*

27   *Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).  Courts apply the same standards to discrimination

28

claims under the RA as they do to discrimination claims under the ADA.  *See Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1003 n.1 (9th Cir. 2007).  The Ninth Circuit stated, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the [RA]," and thus, if an entity complies with the ADA, they are considered in compliance with the RA as well.  *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir.1999).  In order to prove a claim under the ADA and the RA, a plaintiff must establish that:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*O'Guinn v. Lovelock*, 502 F.3d 1056, 1060 (9th Cir. 2007) (citation and quotation omitted).  The Ninth Circuit has interpreted the causal language "by reason of" to require that a plaintiff show that a discriminatory reason was a "motivating factor" in the defendant's decision.  *Head v. Glacier NW. Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005).  Furthermore, to recover monetary damages, a plaintiff must prove intentional discrimination by the defendant.  *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138-39 (9th Cir. 2001).  The standard for intentional discrimination is deliberate indifference, requiring the plaintiff to show that the defendant knew "harm to a federally protected right [wa]s substantially likely" and failed to act upon that likelihood.  *Id.* at 1139.

"When the plaintiff has alerted the public entity to his need for accommodations (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Id.* "In order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.*

**B.      Failure to Exhaust Administrative Remedies**

      **1.   Exhaustion under the PLRA**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Ross v. Blake*, 136 S.Ct. 1850, 1856-57 (2016); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90).

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendants bear the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). If the defendants make such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

      **2.   NDOC's Inmate Grievance System**

Administrative Regulation ("AR") 740 governs the grievance process at NDOC institutions. An inmate must grieve through all three levels: (1) Informal; (2) First Level; and (3) Second Level. (*See* Def. Exh. D.) The inmate may file an informal grievance within six months "if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights claims." (*Id.* at 6.) The inmate's failure to submit the informal grievance within this period "shall constitute abandonment of the inmate's claim at this, and all subsequent levels." (*Id.* at 7.) NDOC staff is required to respond within forty-five days. (*Id.* at

8

8.) An inmate who is dissatisfied with the informal response may appeal to the formal level within five days. (*Id.*)

At the first formal level, the inmate must "provide a signed, sworn declaration of facts that form the basis for a claim that the informal response is incorrect," and attach "[a]ny additional relevant documentation." (*Id.*) The grievance is reviewed by an official of a higher level, who has forty-five days to respond. (*Id.* at 9.) Within five days of receiving a dissatisfactory first-level response, the inmate may appeal to the second level, which is subject to still-higher review. (*Id.*) Officials are to respond to a second-level grievance within sixty days, specifying the decision and the reasons the decision was reached. (*Id.*) Once an inmate receives a decision disposing of the second-level grievance, he or she is considered to have exhausted available administrative remedies and may pursue civil rights litigation in district court.

An official grievance response that exceeds the timeframe does not result in an automatic finding for the inmate. (*Id.* at 5.) Rather, AR 740.038 requires the official to complete the response, even if it is overdue. (*Id.*) In turn, the inmate may await the response before appealing, with the applicable timeframe suspended until the inmate receives the overdue response. (*Id.*) Alternatively, the inmate may immediately appeal to the next grievance level without awaiting a response, though this option is not available at the second-grievance level.

### 3. Exhaustion of Seely's Claim

Defendants contend that Seely failed to exhaust his administrative remedies because he did not properly follow the grievance procedure set forth in AR 740, and as a result, prison officials were unable to respond to his grievance on the merits. (ECF No. 78 at 8.) Seely challenges defendants' assertion by claiming that he properly followed AR 740, but administrative remedies were effectively unavailable because his grievance was improperly screened at each stage of the grievance process. (Plaintiffs' Opp. at 12-18.)[4]

---

[4] Plaintiffs filed a fifty-five-page opposition to defendants' motion for summary judgment. Their opposition is filed at ECF numbers 91, 91-1, and 91-2. To avoid confusion, the court cites to plaintiffs' pagination, e.g., Plaintiffs' Opp. At 13.

1    Although the PLRA requires exhaustion only of those administrative remedies "as are

2    available," the PLRA does not require exhaustion when circumstances render administrative

3    remedies "effectively unavailable." *See Nunez*, 591 F.3d 1217, 1223-26 (9th Cir. 2010). The

4    Ninth Circuit recognizes that "improper screening of an inmate's administrative grievances renders

5    administrative remedies 'effectively unavailable' such that exhaustion is not required under the

6    PLRA." *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010).  To meet this exception to the

7    exhaustion requirement, an inmate "must establish (1) that he actually filed a grievance or

8    grievances that, if pursued through all levels of administrative appeals, would have sufficed to

9    exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his

10   grievance or grievances for reasons inconsistent with or unsupported by applicable regulations."

11   *Id.* at 823.

12              i.    *Sufficiency of Seely's Grievance Allegations*

13   Defendants contend that Seely failed to exhaust his administrative remedies for his ADA

14   claim of discrimination because his grievances do not allege that he was denied employment

15   opportunities and advancement through the level system due to his disability. (ECF No. 78 at 8.)

16   Seely concedes that his grievance does not discuss the denial of employment opportunities or that

17   he was prevented from advancing through the level system due to his disability. (ECF No. 91-1

18   at 17-18.)  However, it is clear from Seely's grievance that he provided prison officials notice that

19   he had a possible ADA discrimination claim based on his lack of access to exercise facilities

20   suitable to his disability. *Griffin*, 557 F.3d at 1120.  He makes repeated reference to his inability

21   to use the athletic field or outdoor bathroom facilities because he is wheelchair bound.  (*See*

22   Plaintiffs' Exh. 9.)  Thus, the court recommends summary judgment be granted as to Lyons's ADA

23   claim but only to the extent that it is based upon his denial of employment and advancement in the

24   level system.

25              In addition, the court finds that Seely's grievances, if considered on the merits, would

26   suffice to exhaust his Eighth Amendment claim. His informal grievance alleges that he is

27   prevented from exercising because the athletic field is not ADA accessible. Furthermore, his first

28

1    level grievance directly states that he is raising an Eighth Amendment issue. Because deprivation

2    of exercise may amount to a violation of the Eighth Amendment, *Wilson v. Seiter*, 501 U.S. 294,

3    304 (1991), Seely's Eighth Amendment claim cannot be dismissed for failure to exhaust on this

4    basis.

5           Finally, defendants claim that Seely failed to exhaust his Fourteenth Amendment equal

6    protection claim. (ECF No. 78 at 8-9.) Defendants argue that Seely failed to file a grievance on

7    the issue of being treated differently from inmates in the SSLP (*Id.*) However, Seely's grievance

8    states that he is denied equal access to exercise available to non-disabled inmates solely because

9    of his disability. (Def. Exh. E at 3-4.) Seely's grievance provided adequate notice to prison

10   officials of the nature of his Fourteenth Amendment claim because it clearly asserts he is treated

11   unequally on the basis of his disability. *See Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008).

12   Seely did not need to identify SSLP participants by name at the grievance stage to provide notice

13   of a possible Fourteenth Amendment violation. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th

14   Cir. 2009) (an inmate must provide the prison with sufficient notice of "the nature of the wrong

15   for which redress is sought" before litigating his claim).

16          Accordingly, the court finds that Seely's grievance would have sufficed, if reviewed on

17   the merits, to exhaust his Eighth Amendment claim, his Fourteenth Amendment claim, and his

18   ADA and RA claim that NNCC's exercise facilities are not wheelchair accessible. *Sapp*, 623 F.3d

19   at 823.

20          ii.    *Improper Screening*

21          The next issue the court must determine is whether Seely's grievance was screened for

22   improper purposes. Prison officials screened Seely's grievance on four separate occasions. The

23   court considers each screening in turn.

24          First, the record before the court shows that Seely filed an informal grievance on March

25   30, 2013. (Def. Exh. E at 1.) Prison officials denied Seely's grievance on substantive grounds.

26   (*Id.* at 2.) They stated that Seely did not allege facts regarding the level system that give rise to a

27   due process violation. (*Id.*) However, Seely did not raise a due process argument nor did he raise

28

1   an issue with the level system, and the official response failed to mention Seely's allegations that

2   exercise facilities were not accessible to him. (*Id.*) Thus, this screening was improper because it

3   did not address Seely's allegations as required by AR 740.05(3). (Def. Exh. D at 5.)

4          Second, Seely filed his first level grievance on July 1, 2013. (Def. Exh. E at 3-4.) His

5   grievance asserts that he had not yet received a response to his informal grievance on that same

6   date. (*Id.* at 4.) Seely's July 1, 2013 first level grievance was returned to him on September 13,

7   2013, for failure to attach his informal grievance and the official response. (*Id.* at 5.) The response

8   directed Seely to attach these documents and resubmit his first level grievance and cautioned Seely

9   that the failure to do so constitutes abandonment of his grievance. (*Id.*) In his motion, Seely

10  claims that he filed his first level grievance without attaching the response because prison officials

11  exceeded their allotted time frame to respond to his informal grievance by two months, which

12  permitted Seely to proceed to the next level review under AR 740.03(8)(B). (Plaintiffs' Opp. at

13  13.) According to Seely, he did not receive the official response until July 26, 2013, so it was not

14  possible for him to attach it at the time he submitted his first level grievance. (*Id.* at 12.)

15  Defendants' offer evidence that the informal grievance response was issued to Seely on May 29,

16  2013. (Def. Exh. E at 2.)

17         This dispute is immaterial. The record demonstrates that prison officials exceeded their

18  forty-five-day time limit to respond to Seely's informal grievance under AR 740.05(12), (Def.

19  Exh. D at 6), regardless of whether he received it on May 29, 2013, as defendants' contend, or on

20  July 26, 2013, as Seely contends. Under AR 740.03(8)(B), Seely was permitted to file his first

21  level grievance once forty-five days elapsed from the date he filed his informal grievance.

22  Furthermore, he was permitted to do so without attaching the official response to his informal

23  grievance; it would defy logic for this rule to require an inmate to attach a response that he had not

24  yet received. Because Seely notified prison officials that he filed his first level grievance pursuant

25  to AR 740.03(B), (Def. Exh. E at 4), the court finds that prison officials erred in rejecting Seely's

26  July 1, 2013 grievance for failing to attach the official response. *Woodford v. Ngo*, 548 U.S. 81,

27  90 (2006) ("[C]ourts should not topple over administrative decisions unless the administrative

28

1    body not only has erred, *but has erred against objection made at the time appropriate under its*

2    *practice.*") (internal quotations omitted).   Defendants' contention that plaintiff was required to

3    attach the carbon copy of his informal grievance to his July 1, 2013 grievance is immaterial

4    because it does nothing to cure the erroneous conclusion that Seely was required to attach his

5    informal response to begin with. (*See* Def. Exh. E at 5.)

6         Third, Seely claims that after finally receiving a response to his informal grievance on July

7    26, 2013, he immediately filed another first level grievance that day. (*Id.* at 13-14.) This first

8    level grievance was returned to him for failure to attach official response to his July 1, 2013, first

9    level grievance. (Def. Exh. E at 8.) Plaintiff asserts that he could not attach the requested response

10   to his July 26, 2013 first level grievance because that response had not been returned to him at the

11   time of filling. (Plaintiffs' Opp. at 14-15.) He filed his July 26, 2013, first level grievance, despite

12   the fact that his July 1, 2013, first level grievance was pending, in an attempt to meet the AR

13   740.05(12)(A) requirement that inmates appeal an informal grievance within five days of receiving

14   an official response. (*Id.*) Defendants contend only that prison officials permissibly screened

15   Seely's July 26, 2013, grievance for failing to comply with the rules. To the contrary, Seely clearly

16   attempted to comply with the five-day time frame that begins "upon receipt of the [informal]

17   response." (Def. Exh. D at 6.) He also attempted to comply with AR 740.06(2), which states that

18   "any additional relevant documentation should be attached at [the first] level."   While Seely had

19   not yet received an official response to his July 1 first level grievance at the time he submitted his

20   July 26 first level grievance, he did have access to, and attached, his returned informal grievance

21   and the response. Defendants do not explain how Seely could have possibly attached an official

22   response that had not yet been returned, and possibly had not yet been written.   The vague and

23   permissive language of AR 740.06(2) that inmates "should" attach "any relevant documentation"

24   cannot justify the dismissal of Seely's grievance for failing to bring about a physical impossibility.

25        Fourth, plaintiff filed his second level grievance on the day he received a response to his

26   July 26 first level grievance, (Def. Exh. E at 9), and prison officials screened his second level

27   grievance for failing to complete the prior levels of the grievance process.   (*Id.* at 10-12.)

28

13

1    However, the court determines that prison officials, not Seely, failed to complete the prior levels

2    of the grievance process.    The improper application of AR 740's technical requirement to

3    repeatedly reject Seely's grievances gives rise to "a good faith belief that administrative remedies

4    were effectively unavailable." *Sapp*, 623 F.3d at 826.    Accordingly, Seely was not required to

5    exhaust his administrative remedies for those claims he alleged in his grievance: his Eighth

6    Amendment claim, Fourteenth Amendment claim, and ADA and RA claim that NNCC exercise

7    facilities are not wheelchair accessible.

8             **4.   Exhaustion of Boston's Claim**

9             Defendants contend that Boston failed to properly exhaust his Eighth Amendment claim

10   because his grievance does not allege that he was denied outdoor exercise.    (ECF No. 78 at 9.)

11   Boston concedes that he failed to exhaust his Eighth Amendment claim regarding outdoor

12   exercise, (Plaintiffs' Opp. at 19), and a review of his grievances shows that he made no claims

13   regarding outdoor exercise that would put prison officials on notice that an Eighth Amendment

14   violation was afoot. *See Griffin*, 557 F.3d at 1120. The court recommends that summary judgment

15   be granted as to Boston's Eighth Amendment claims for failure to exhaust his administrative

16   remedies.

17            Defendants also contend that although Boston referenced the ADA in regards to the level

18   system, Boston failed to exhaust his ADA and RA claims regarding NNCC's outdoor exercise

19   facilities and programs. (ECF No. 78 at 9.)  Boston does not challenge his failure to grieve ADA

20   and RA claims in the context of NNCC's outdoor exercise facilities. (Plaintiffs' Opp. at 19.)  A

21   careful inspection of Boston's grievances confirms that Boston never alleged that NNCC's outdoor

22   exercise facilities were noncompliant with the ADA and RA. (*See* Def. Exh. H; Plaintiffs' Exh.

23   14.)  In contrast, Boston's complaint, which is nearly identical to the complaints filed by Seely

24   and Lyons, directly claims that the outdoor exercise facilities and programs available to level three

25   inmates do not meet the accessibility standards of the ADA and RA.  (ECF No. 5 in Case No.

26   3:15-CV-00124-MMD-VPC.)  Boston's failure to raise an issue regarding the accessibility of

27   NNCC's outdoor exercise facilities did not provide the prison with sufficient notice of "the nature

28

of the wrong for which redress is sought" before litigating this aspect of his ADA and RA claim. *Griffin*, 557 F.3d at 1120. Defendants have carried their burden of establishing that Boston failed to exhaust his administrative remedies for his ADA and RA regarding NNCC's outdoor exercise facilities and programs.

The court recommends granting summary judgment as to Boston's Eighth Amendment claim and as to Boston's ADA and RA claim to the extent that it is based on allegations that NNCC's outdoor exercise facilities are noncompliant with the ADA and RA.

### 5. Exhaustion of Lyons's Claim

Defendants contend that Lyons failed to exhaust his administrative remedies for his ADA and RA claim of discrimination because his grievances do not allege that he was denied employment opportunities and advancement through the level system due to his disability. (ECF No. 78 at 9-10.) Lyons concedes that he never grieved that he could not obtain employment opportunities or that he was prevented from advancing through the level system due to his disability. (Plaintiffs' Opp. at 22.) The court notes that Lyons's grievance contains no allegation that NNCC denied plaintiff employment opportunities or the opportunity to advance in the level system. (Def. Exh. J.) Rather, Lyons's grievance asserts that the level system discriminated against him because, upon its implementation, NNCC restricted him to exercise facilities that able-bodied inmates could utilize, but that he was prevented from accessing due to his disability. (*Id.*) Lyons's grievance provided prison officials notice that he had a possible ADA discrimination claim based on his lack of access to exercise facilities suitable to his disability, but it did not provide notice of an ADA claim based on a lack of employment and advancement opportunities. *Griffin*, 557 F.3d at 1120. Thus, the court recommends summary judgment be granted as to Lyons's ADA claim, but only to the extent that it is based upon his denial of employment and advancement in the level system.

In their reply, defendants also claim that Lyons failed to exhaust his Fourteenth Amendment equal protection claim. (ECF No. 102 at 5.) Defendants argue that Lyons's grievance makes no reference to the SSLP, nor explains how the level system discriminated against Lyons

1    on the basis of his disability. (*Id.*) Lyons argues that his grievance provided sufficient notice of

2    the nature of his Fourteenth Amendment claim against the level system. (Plaintiffs' Opp. at 9.)

3    After thoroughly reviewing the record, the court agrees with Lyons. In his grievance, Lyons

4    unambiguously states that the level system is intentionally discriminatory. (Def. Exh. J at 9-10.)

5    He supports his claim by alleging that he was demoted from level one to level two while other

6    similarly situated inmates remained level one, and that this demotion deprived him of exercise

7    facilities that accommodate his disability. (*Id.* at 7.) Lyons's grievance provided adequate notice

8    to prison officials of the nature of his Fourteenth Amendment claim because it clearly asserts that

9    the level system is discriminatory and explains how the level system discriminated against him on

10   the basis of his disability. Lyons did not need to identify SSLP participants by name at the

11   grievance stage to provide notice of a possible Fourteenth Amendment violation. *See Griffin v.*

12   *Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (an inmate must provide the prison with sufficient

13   notice of "the nature of the wrong for which redress is sought" before litigating his claim).

14   **C.    Eighth Amendment Conditions of Confinement Claim**

15          Because Boston failed to properly exhaust his Eighth Amendment claim, only Seely and

16   Lyons have Eighth Amendment claims before the court. Defendants contend that Seely and

17   Lyons's Eighth Amendment claims fail because neither Seely nor Lyons was completely denied

18   outdoor exercise. (ECF No. 78 at 10.) Instead, the prison provided Seely, Lyons, and other level

19   three inmates the option to exercise on the outdoor athletic field. (*Id.*) Defendants provide Baca's

20   declaration as evidence that the athletic field is comprised of hard packed dirt and grass that

21   disabled inmates have used to exercise without issue, that any damage the track might cause to a

22   wheelchair can be repaired by the prison, and that NNCC recently paved a new outdoor exercise

23   pad to "increase ADA accessibility." (*Id.*; *see* Def. Exh. A at 2-3.) Seely and Lyons dispute

24   defendants' assertion and provide evidence that the track is inaccessible to wheelchair-bound

25   inmates, such as themselves. (Plaintiffs' Opp. at 41-43.)

26          The court agrees with Seely and Lyons that summary judgment is improper. Seely and

27   Lyons cite to defendants' admission that the entrance to the athletic field is at an incline, (Exh. 2

28

1   at 20), although they mischaracterize defendants' response as an admission that the entrance is at

2   a "down-hill slope." (Plaintiffs' Opp. at 41.)  This mischaracterization notwithstanding, Seely and

3   Lyons raise a genuine dispute as to whether a gradient to the entrance of the athletic track prevents

4   them from accessing the track, which is material to whether they are sufficiently deprived of

5   outdoor exercise to constitute a violation of the Eighth Amendment. *See Spain v. Procunier*, 600

6   F.2d 189, 199 (9th Cir. 1979) (deprivation of outdoor exercise for inmates with "meager out-of-

7   cell movements" constitutes cruel and unusual punishment under Eighth Amendment).

8           Seely and Lyons also provide photographs of footprints in the athletic field, which they

9   interpret as evidence that the field is comprised of soft dirt and sand rather than hard-packed dirt.

10  (Def. Exh. A at 2-6, 7-13.)  As a result, inclement weather causes the field to "become deteriorated

11  by mud or snow …." (ECF No. 91-2 at 12-13.)  Finally, Seely and Lyons cite to a "wheelchair

12  use agreement" that NDOC and NNCC's medical department required "for many years." (*Id.* at

13  13.)   The wheelchair agreement mandates that inmates who have receive a prison-issued

14  wheelchair must not "roll or push this chair through dirt or up steps, which I acknowledge will

15  cause damage." (Plaintiffs' Exh. 48.)  The court finds that Seely and Lyons have produced

16  sufficient evidence for a reasonable jury to conclude that the athletic field was not accessible to

17  them because they require wheelchairs.  Should a jury determine that their only avenue for outdoor

18  exercise is the athletic field, such a finding would be material to establishing the objective prong

19  of the Eighth Amendment.  *See Toussaint*, 801 F.2d at 1107.   Furthermore, the wheelchair

20  agreement is evidence upon which a rational jury could find that defendants were aware or should

21  have been aware that wheelchair bound inmates would be unable to use the athletic field, and

22  thereby deprived of outdoor exercise.  Such a finding is material to proving the subjective prong

23  of an Eighth Amendment violation.  *See Farmer*, 511 U.S. at 834.   Accordingly, the court

24  recommends that summary judgment be denied as to Seely and Lyons's Eighth Amendment claims

25  because they raise genuine disputes of material fact for trial. *Celotex*, 477 U.S. at 330.

26

27

28

1    **D.    ADA and RA Claim**

2        Before considering defendants' arguments against plaintiffs' remaining ADA and RA

3    claims, the court must first define the contours of plaintiffs' ADA and RA claim currently before

4    the court.  Plaintiffs' separate, but largely identical, complaints allege various factual allegations

5    that support an ADA and RA claim.  In light of the court's exhaustion analysis, the court interprets

6    plaintiffs' complaint to raise two separate ADA and RA claims based on different underlying

7    factual allegations: (1) an ADA and RA discrimination claim against the level system, and (2) an

8    ADA and RA accessibility claim based on NNCC's exercise facilities.

9        The crux of plaintiffs' ADA and RA discrimination claim is that the level system

10    automatically categorizes disabled inmates as level two or three unless they capable of working in

11    one of NNCC's various job assignments. (Plaintiffs' Opp. at 24-34.)  Plaintiffs argue that this

12    system of categorization excludes them on the basis of their disability because they are not able-

13    bodied and because their disability prevents them from working.  (*Id.*)  In contrast, plaintiffs'

14    accessibility claim is based on allegations that the prison facilities themselves are inadequately

15    accessible to inmates with disabilities in violation of the ADA and RA.  (Plaintiffs' Opp. 38-51.)

16    The court screened plaintiffs' complaints and allowed them to proceed on their ADA and RA claim

17    based upon the denial of employment and advancement opportunities in the level system, as well

18    as the noncompliant exercise facilities at NNCC.

19        However, given that the court determines that Boston failed to grieve any facts relating the

20    accessibility of NNCC's outdoor exercise facilities, the court must construe his claim as an ADA

21    and RA discrimination claim only.  Allowing Boston to proceed on an ADA and RA noncompliance

22    claim would be prejudicial to defendants and violate the PLRA because defendants were never

23    given the opportunity to internally remedy the noncompliant feature of their exercise facilities that

24    injured Boston. *See Porter*, 534 U.S. at 525.  Construing Boston's ADA and RA claim in this way

25    is in accord with plaintiffs' descriptions of their respective disabilities.  While Seely and Lyons are

26    confined to wheelchairs, Boston is able to walk but suffers from a severe lung disease. (Def. Exh.

27    C; Plaintiffs' Opp. at 18.)  Any ADA and RA accessibility claim Boston might have rests on

28

1  different factual allegations of inaccessibility than those supporting Seely and Lyons's accessibility

2  claim.

3       Given that the court finds that both Seely and Lyons failed to grieve any facts relating to

4  denial of employment opportunities or denial of advancement in the level system, the court must

5  construe their claims as ADA and RA accessibility claims. *See Porter*, 534 U.S. at 525. Lyons

6  contends that he grieved that the level system was discriminatory, but his discrimination allegations

7  were based on being unable to access the exercise facilities available to him as a level two inmate.

8  (Plaintiffs' Opp. at 22.)  An ADA and RA claim of noncompliance addresses the implicit

9  discrimination that Lyons complained of in his grievance.  Seely, on the other hand, concedes that

10  did not raise an issue against the level system in his grievance. (*Id.* at 18.) Thus, neither Seely nor

11  Lyons can join in on Boston's ADA and RA discrimination claim, while Boston cannot join in on

12  Seely and Lyons' ADA and RA accessibility claims.

13       **1. Boston's ADA and RA claim**

14       Defendants contend that they are entitled to summary judgment against Boston's ADA and

15  RA claim that he has been denied advancement through the level system because of his disability.

16  (ECF No. 78 at 12-14.)  The level system does not require disabled inmates to be classified as a

17  certain level because of their disability, nor does it preclude disabled inmates from obtaining

18  employment or advancing to the next level. (*Id.* at 13; *see* Def. Exh. A, B.)  It was designed to

19  incentivize good behavior and control the movements of inmates based on their performance in

20  certain criteria, such as employment status. (Def. Exh. A at 1; Def. Exh. B at 1-2.)  According to

21  Warden Baca's declaration, disabled inmates can request accommodations for job assignments to

22  aid their advancement in the level system, and many disabled inmates have done so. (Def. Exh.

23  A at 1.) Defendants argue that Boston's failure to advance through the level system is due to his

24  failure to obtain and maintain a job assignment, not because of his disability. Boston's case notes

25  for the relevant period reflect that he has not applied for any work positions, much less has been

26  denied a job due to his disability. (*Id.* at 14; *see* Def. Exh. N.)

27       Plaintiff does not challenge the lack of discriminatory language within the level system

28

1    guidelines.  Rather, Boston argues that he is unable to secure a job assignment because of his

2    disability.  Boston holds a paralegal certificate from Blackstone School of Law and applied to a

3    position as a law clerk, but was denied because NNCC required him to commit to ninety days of

4    yard duty or culinary work. (Plaintiffs' Opp. at 49.) He claims that his severe lung illness prevents

5    him from engaging in yard duty or culinary work, and NNCC offered no reasonable

6    accommodation for him to complete this prerequisite to becoming a law clerk. (*Id.*)  Defendants'

7    point out Boston's admission that he did not seek a reasonable accommodation for yard duty or

8    culinary work. (*Id.*; ECF No. 78 at 14.)

9        Taking the evidence in the light most favorable to Boston, the court cannot conclude that

10   Boston has raised a genuine dispute that he was denied employment, and thereby denied the ability

11   to advance in the level system, by reason of his disability.  Boston's claim that he holds a paralegal

12   certificate is sufficient evidence that he is qualified for a law clerk position at NNCC under the

13   ADA and RA. *See O'Guinn*, 502 F.3d at 1060 (setting out elements of an ADA and RA claim).

14   However, his claim that he was denied this position because he did not commit to ninety days of

15   yard duty or culinary duty plainly establishes that the reason he was denied that position was

16   because of his choice not to work on the yard or in the kitchen.  While it is true that the refusal to

17   provide a reasonable accommodation may be discriminatory, *see Pierce v. County of Orange*, 526

18   F.3d 1190 (2008), Boston admits that he never requested a reasonable accommodation.  He self-

19   screened himself from the yard duty and culinary work commitments, which establishes only that

20   he was denied his law clerk position because of a personal choice, rather than because of his

21   disability.  A reasonable jury cannot find on the basis of this evidence that "a discriminatory reason

22   was a motivating factor" in the defendant's decision to deny him a job as a law clerk. *Head v.*

23   *Glacier NW. Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005).  Boston's evidence that light-duty jobs he

24   was capable of performing were eliminated, and evidence that education was removed as a criterion

25   for advancement in the level system, fails to raise a genuine dispute of material fact because plaintiff

26   is unable to show that he could not attain employment and advance in the level system due to his

27   disability. (Plaintiffs' Opp. at 28-29; *see* Plaintiffs' Exh. 32 at 4.)  The court recommends that

28

1  summary judgment be granted as to Boston's ADA and RA claim that the level system is
2  discriminatory.

3      **2.  Seely and Lyons's ADA and RA Accessibility Claims**

4          Under the regulations promulgated by Title II of the ADA, public entities must operate each
5  service, program, and activity so that the service, program or activity, when viewed in its entirety,
6  is readily accessible and usable by individuals with disabilities." 28 C.F.R. §35.150(a)(3) (2017).
7  However, a public entity need not "make each of its existing facilities accessible to and usable by
8  individuals with disabilities," and it is not required "to take any action that it can demonstrate would
9  result in a fundamental alteration in the nature of a service, program, or activity or in undue financial
10  and administrative burdens." *Id.* § 35.150(a)(3). "Where reasonable alternative methods achieve
11  compliance, structural changes to existing facilities need not be made." *Pierce v. Cty. of Orange*,
12  526 F.3d 1190, 1219 (9th Cir. 2008)

13          Defendants do not directly challenge Seely and Lyons's remaining ADA and RA claim that
14  NNCC's exercise facilities are inaccessible to them because of their disabilities.  However,
15  defendants dispute that the athletic field is inaccessible in their argument that Seely and Lyons'
16  have not been deprived outdoor exercise in violation of the Eighth Amendment.  (ECF No. 72 at
17  10–11.)  As determined above, Seely and Lyons succeed in raising a genuine issue of material fact
18  as to whether the athletic field is accessible.

19          Additionally, Seely and Lyons provide evidence that a large portion of NNCC's gym is
20  inaccessible to them. They cite to defendants' admissions and photos that the stationary exercise
21  equipment is located on a stage platform area that does not have safety rails to accommodate
22  wheelchair bound inmates. (Plaintiffs' Opp. at 44.)  They also provide evidence that the toilets in
23  the gym lack a transfer bar for facilitating transfers between the toilet and a wheelchair, and that
24  the restroom sinks and drinking fountains do not comply with ADA standards for accessible design.
25  (*Id.*; Plaintiffs' Exh. 4 at 4.)  Defendants admit that these facilities are non-compliant, and claim
26  only that remedial steps are being taken.  (*Id.*)  Seely and Lyons provide extensive evidence

27
28

1  sufficient for a jury to find that NNCC's gym facilities violate the accessibility requirements of the

2  ADA and RA.  *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

3          Finally, Seely and Lyons provide evidence that there are no outdoor bathrooms or facilities

4  for the disabled and non-disabled to use during the mandated recreational time.  (Plaintiffs' Opp.

5  at 43) (citing ECF No. 91-3 at 6).  Defendants maintain that there is a urinal at the weight area next

6  to the athletic field, but admit that the urinals are locked during level two and level three recreational

7  time, and do not have safety rails to accommodate disabled inmates.  (Plaintiffs' Exh. 2 at 19-20.)

8  Although the ADA does not mandate that a public entity make each of its existing facilities

9  accessible, the evidence tends to show that there is no accessible outdoor bathroom, and that

10  NNCC's gym bathrooms are also inaccessible.  Defendants' contend that Seely and Lyons are able

11  to use indoor ADA-compliant bathroom facilities, (ECF No. 102 at 8), but whether this is a

12  reasonable alternative is a factual issue for the jury to decide.  *Pierce*, 526 F.3d at 1219.

13          Seely and Lyons have met their burden of demonstrating that a genuine issue of material

14  fact exists as to whether the accessibility of the athletic field, gym, and outdoor bathrooms are

15  inaccessible to them due to their disabilities.  Defendants' evidence is insufficient to preclude a

16  reasonable jury from finding in Seely and Lyons's favor, and defendants fail to demonstrate that

17  any reasonable modifications would fundamentally change the nature of NNCC's outdoor exercise

18  program or result in an undue burden.  *See Peirce*, 526 F.3d at 1214-17.  Accordingly, the court

19  recommends that summary judgment be denied as to Seely and Lyons's claims that NNCC exercise

20  facilities are inaccessible to them.

21  **E.    Fourteenth Amendment Claim**

22          Defendants allege that plaintiffs' Fourteenth Amendment claim must fail because they

23  cannot establish that they are similarly situated to SSLP participants or that defendants excluded

24  plaintiffs with discriminatory intent.  (ECF No. 78 at 15, 16.)  Plaintiffs contend that they are

25  similarly situated to members of SSLP because many SSLP participants are disabled.  (Plaintiffs'

26  Opp. at 37.)  The court agrees with defendants.  To be eligible for SSLP, inmates must be at least

27  sixty years old and the program manager must recommend inmates for placement in SSLP.  (Def.

28

1   Exh. M at 2.) Schreckengost's declaration states that defendants are not eligible for SSLP because

2   they are younger than sixty years of age and because they have never sought the recommendation

3   of the SSLP program manager. (Def. Exh. F at 4.) Plaintiffs do not contest Schreckengost's

4   declaration. As a result, plaintiffs are unable to establish that they are similarly situated to SSLP

5   members who are not subject to the restrictions of the level system. Plaintiffs' Fourteenth

6   Amendment claim is based entirely on their unequal treatment vis-à-vis SSLP participants whose

7   age is akin to a disability. (*See* ECF No. 4 at 32.) Without the ability to establish that they are

8   similarly situated to SSLP participants, plaintiffs will be unable to identify "the factor motivating

9   the alleged discrimination," much less prove that defendants' alleged discrimination against

10  plaintiffs was motivated by their status as persons with disabilities. *Furnace*, 705 F.3d at 1021.

11  Even assuming that plaintiffs and SSLP participants are similarly situated, the eligibility

12  requirements for the SSLP clearly show that plaintiffs are excluded from receiving the benefits

13  that SSLP members receive because they are too young, not because they are disabled. *City of*

14  *Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 441 (1985) (classifications based on age are

15  not suspect classification under the Fourteenth Amendment); *see Presnick v. Berger*, 837 F. Supp

16  475, 477 (1993) (non-senior adults are not suspect class). Indeed, plaintiffs admit and rely on the

17  fact that the SSLP has disabled participants. (*See* ECF No. 91 at 14.) No reasonable jury can find

18  that disability was a motivating factor in the defendants' decision to implement policy that

19  provides favorable treatment to SSLP participants, but not plaintiffs. Accordingly, the court

20  recommends that summary judgment be granted against plaintiffs' Fourteenth Amendment claims.

21  **F.      Supervisory Liability**

22          Defendants argue that they are entitled to summary judgment because plaintiffs fail to

23  establish that Baca, Cox, McDaniel, Schreckengost, and Walsh personally participated in the

24  alleged violation of plaintiffs' constitutional and statutory rights. Defendants do not extend this

25  argument to Sandoval, Laxalt, or Cegavske because they remain defendants solely in their official

26  capacities for the purpose of providing prospective injunctive relief. *See City of Oklahoma City*

27  *v. Tuttle*, 471 U.S. 808 (1985) (official capacity claims are based upon a theory of a local

28

1    governmental unit's wrongdoing, not of an official's personal wrongdoing); *Monell v. Dep't of*

2    *Soc. Servs.*, 436 U.S. 658, 690-91 (1978). According to defendants, plaintiffs provide no evidence

3    that Baca, Cox, McDaniel, Schreckengost, and Walsh personally denied plaintiffs' requests for

4    reasonable accommodations or discriminated against plaintiffs on the basis of their disability.

5    (ECF No. 78 at 17.) Plaintiffs reference their grievance history and complaint as evidence that

6    Baca, Cox, McDaniel, Schreckengost, and Walsh were aware of plaintiffs' request for

7    accommodations but denied their requests and were directly involved in implementing the level

8    system. (Plaintiffs' Opp. at 53; *see* Plaintiffs' Exh. 6 to Exh. 22.)

9        All government employees are "persons" under § 1983 and can be sued in their individual

10   capacity for violating clearly established constitutional rights "under color of state law." *Hafer v.*

11   *Melo*, 502 U.S. (1991). Individual capacity suits cannot be brought on a theory of vicarious

12   liability, so a plaintiff must plead that "each Government-official defendant, through the official's

13   own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009);

14   *see also Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011) (discussing *Iqbal* and explaining

15   that "when a supervisor is found liable based on deliberate indifference, the supervisor is being held

16   liable for his or her own culpable action or inaction, not held vicariously liable for the culpable

17   action or inaction of his or her subordinates.").

18       A supervisor who does not personally participate may nevertheless establish the requisite

19   causal connection and incur liability under § 1983 if he implements a policy so deficient that the

20   policy "itself is a repudiation of constitutional rights" and is "the moving force of the constitutional

21   violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991). In other words,

22   liability may be established when a supervisor "sets in motion a series of acts by others which the

23   [supervisor] knows or reasonably should know would cause others to inflict' constitutional harms."

24   *Preschooler II v. Clark County School Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007)

25   (internal quotations omitted).

26       The court agrees with plaintiffs. Plaintiffs' grievance history is evidence that Baca, Cox,

27   McDaniel, Schreckengost, and Walsh, as NNCC supervisors, were given notice of possible

28

1   constitutional violations committed against plaintiffs.  (*See* Plaintiffs' Exh. 6 at 10 to Exh. 22.)

2   Although denial of a grievance is not generally enough to impose supervisory liability in itself,

3   plaintiffs also allege facts in their verified complaint that show these defendants were directly

4   involved in implementing the level system that resulted in the alleged violations of plaintiffs'

5   constitutional and statutory rights.  (Plaintiffs' Opp. at 53.)  Defendants do not contest their

6   participation in implementing the level system.  Furthermore, plaintiffs provide evidence that

7   NNCC supervisors were aware that NNCC contains architectural "barriers to access for persons

8   with disabilities ...."  (Plaintiffs' Exh. 53.)  When viewed in the light most favorable to plaintiffs,

9   their evidence is sufficient for a reasonable jury to conclude that Baca, Cox, McDaniel,

10  Schreckengost, and Walsh personally participated in causing plaintiffs harm and may be held

11  liable for the resulting constitutional violations.

12  **G.    Qualified Immunity**

13          Finally, defendants argue that qualified immunity shields them from liability.  (ECF No.

14  78 at 17–19.)  Government officials performing discretionary functions are entitled to qualified

15  immunity, shielding them from personal liability for civil damages "as long as their actions could

16  reasonably have been thought consistent with the rights they are alleged to have violated."

17  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citations omitted). Resolving an official's

18  qualified immunity claims requires two steps: First, the court must consider whether the facts

19  "[t]aken in the light most favorable to the party asserting the injury ... show [that] the [defendant's]

20  conduct violated a constitutional right ...."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Second,

21  the court must determine whether the right was clearly established at the time of the alleged

22  violation.  *Id.*  These are purely legal questions for the court, and if the court finds both prongs in

23  the affirmative, then qualified immunity does not apply.  *See Serrano v. Francis*, 345 F.3d 1071,

24  1080 (9th Cir. 2003).

25          Qualified immunity does not apply to Sandoval, Laxalt, and Cegavske because they are

26  defendants solely to provide prospective injunctive relief.  *See Eng v. Cooley*, 552 F.3d 1062, 1064

27  n.1 (9th Cir. 2009); *L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993)

28

1    (qualified immunity does not shield against official capacity suits for declaratory or injunctive

2    relief).  Nor does qualified immunity apply to Baca, Cox, McDaniel, Schreckengost, and Walsh.

3    Where there are factual disputes as to the parties' conduct or motives, the case cannot be resolved

4    at summary judgment on qualified immunity grounds.  *See Lolli v. Cty. of Orange*, 351 F.3d 410,

5    421 (9th Cir. 2003); *Wilkins v. City of Oakland*, 350 F.3d 949, 955-56 (9th Cir. 2003).  The court

6    finds that plaintiffs present triable issues of fact as to whether defendants were deliberately

7    indifferent to plaintiffs needs for accessible outdoor exercise.  Whether the officers objectively

8    violated a constitutional right, and whether that right was clearly established at the time of the

9    violation, "may depend upon the jury's resolution of disputed facts and the inferences it draws

10   therefrom."  *Id.* at 421 (quoting *Santos v.* Gates, 287 F.3d 846, 855 n.12 (9th Cir. 2002)).

11   Therefore, the court concludes that Baca, Cox, McDaniel, Schreckengost, and Walsh are not

12   entitled to qualified immunity.

13                          **IV.    CONCLUSION**

14            For the reasons stated herein, the court finds that Seely and Lyons failed to exhaust their

15   administrative remedies for their ADA and RA claim to the extent that it is based upon allegations

16   against the level system.  The court further finds that Boston failed to exhaust his administrative

17   remedies for his Eighth Amendment claim and his ADA and RA claim to the extent it is based

18   upon allegations that NNCC exercise facilities are inaccessible to him because they are not ADA-

19   compliant.  Additionally, the court finds that Boston has failed to raise a genuine dispute material

20   to his remaining ADA and RA claim.  Finally, the court finds that plaintiffs' have failed to raise a

21   genuine dispute material to their Fourteenth Amendment claim.  Accordingly, the court

22   recommends that summary judgment is proper as to Boston's claims in their entirety, Seely and

23   Lyons's Fourteenth Amendment claim, and Seely and Lyons's ADA and RA claim to the extent

24   that it is based upon allegations against the level system.  Seely and Lyons's Eighth Amendment

25   claim, and ADA and RA accessibility claim, should survive summary judgment.

26

27

28

The parties are advised:

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.      RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (ECF No. 78) be **GRANTED** as to all claims brought by Boston and that Boston be **DISMISSED** from this action.

**IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment (ECF No. 78) be **GRANTED** as to plaintiffs' Fourteenth Amendment claim.

**IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment (ECF No. 78) be **DENIED** as to Seely and Lyons's Eighth Amendment claim.

**IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment (ECF No. 78) be **DENIED** as to Seely and Lyons's ADA and RA claim to the extent that it is based on allegations against the level system, and **GRANTED** to the extent that it alleges that NNCC's exercise facilities are not ADA-accessible.

**DATED:** _January 8, 2018_

_Valerie P. Cooke_

**UNITED STATES MAGISTRATE JUDGE**